IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| WILMER D. LOFTIN, ) | Civil Action No. 3:10-2781-RBH-JRM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| MICHAEL J. ASTRUE, COMMISSIONER ) | |
| OF SOCIAL SECURITY ) | |
| ) | |
| Defendant. ) | |
| ) | |

This case is before the Court pursuant to Local Civil Rules 73.02(B)(2)(a) and 83.VII.02, et seq., DSC, concerning the disposition of Social Security cases in this District. The pro se Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").

**ADMINISTRATIVE PROCEEDINGS**

Plaintiff filed applications for DIB and SSI on March 20, 2008, alleging disability as of August 15, 1997. Plaintiff's claims were denied initially and upon reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). After a hearing held on September 29, 2009, at which Plaintiff (who at the time was represented by counsel) appeared and testified, the ALJ issued a decision on December 3, 2009, denying benefits. The ALJ found that Plaintiff was not disabled within the meaning of the Act because under the vocational guidelines (also known as the "Grids") promulgated by the Commissioner, Plaintiff remains able to perform work found in the national economy. See generally 20 C.F.R., Part 404, Subpart P, Appendix 2.

Plaintiff was thirty-four years old at the time he alleges he became disabled and forty-six years old at the time of the ALJ's decision. He has a ninth grade education, and past relevant work as a construction worker, machine maintenance worker, auto body shop worker, motel maintenance/handyman, and assembly line worker. Plaintiff alleges disability due to degenerative disc disease, status post scaphoid fracture, and chronic obstructive pulmonary disease ("COPD").

The ALJ found (Tr. 10-16):

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2007.

2. The claimant has not engaged in substantial gainful activity since August 15, 1997, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*)

3. The claimant has the following severe impairments: degenerative disc disease; status post scaphoid fracture; and chronic obstructive pulmonary disease (COPD) (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a).

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on March 25, 1963 and was 34 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a), 416.969 and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from August 15, 1997 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

On August 25, 2010, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, thereby making the determination of the ALJ the final decision of the Commissioner. Plaintiff filed this action in the United States District Court on October 27, 2010.

The only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389 (1971) and Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). Under 42 U.S.C. §§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, Plaintiff has the burden of proving disability, which is defined as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a); see Blalock v. Richardson, supra.

## **MEDICAL EVIDENCE**

In May 1997, Plaintiff sustained a fall in which he landed on his right upper extremity, resulting in a scaphoid fracture. Tr. 199. Plaintiff had his cast removed on July 17, 1997, at which time he reported he was in no pain. He was given a removable wrist splint and advised to not do any

heavy lifting bending, or twisting. Tr. 201. On September 13, 1997, Plaintiff reported no particular pain in his wrist. An MRI showed no evidence of nonunion. The assessment was that Plaintiff was doing well with delayed scaphoid healing. Tr. 202.

Plaintiff injured his back at work in October 1998. Dr. John W. Noble, an orthopaedist, recommended back surgery. Tr. 206. During a pre-operative physical on December 29, 1998, Dr. Noble explained to Plaintiff that surgery was indicated to relieve Plaintiff's leg pain and that Plaintiff might still have back pain after surgery. Dr. Noble thought Plaintiff would be out of work for approximately four weeks after surgery. Tr. 207.

On January 9, 1999, Plaintiff reported to Dr. Noble that he was feeling a hundred percent better since surgery, he had no more hip pain, and only had mild pain radiating into his anterior thigh. On examination, Plaintiff was noted to be completely neurologically intact. Dr. Noble anticipated that Plaintiff could return to light duty work in another week, but with no sitting for any length of time; no bending, stopping, or twisting; and no lifting for about twelve weeks until his annulus "healed a bit." Tr. 207. Plaintiff reported that he felt much better, but had some mild anterior thigh pain on January 15, 1999. Examination revealed that Plaintiff was neurovascularly intact and was able to perform toe raises on the right, which he could not do prior to surgery. Dr. Noble thought Plaintiff was doing very well; opined that Plaintiff could return to sedentary work in four hour shifts with frequent breaks and no bending, lifting, driving, or prolonged sitting. Tr. 208.

Plaintiff was referred to physical therapy on February 8, 1999 after he experienced increased symptoms in his back and legs. Dr. Noble advised him to stay out of work. Tr. 210. A superficial infection at the surgery site was noted by Dr. Noble on February 25, 1999. Dr. Noble also noted that a new MRI was suspicious for a small recurrent disc herniation. Tr. 211-212. By March 2, 1999,

4

Plaintiff reported he was feeling much better, no longer had any sore inguinal nodes, and was not having much leg pain. He wanted to return to work, and Dr. Noble cautioned him against performing any substantial bending or twisting. Dr. Noble thought Plaintiff could return to work the next week if he was still doing well. Tr. 213.

Although Plaintiff still had a very small area of infection on March 9, 1999, Dr. Noble noted that Plaintiff was "really without many complaints." Tr. 213. The following week Dr. Noble stated that Plaintiff could return to regular duty work, but cautioned him against a lot of bending and lifting. Tr. 214. On March 20, 1999, Plaintiff told Dr. Noble that he returned to work and had done a lot of walking, which had contributed to some left lower extremity symptoms. Dr. Noble prescribed Lodine and Lortab for pain and advised Plaintiff to return in three weeks. Tr. 215.

On April 8, 1999, Plaintiff complained of some burning in his feet, especially when he was standing all day, but not much back pain and only occasional hip pain. Examination revealed that Plaintiff had mildly positive seated straight-leg raise testing, but otherwise had a normal neurological examination. Dr. Noble opined that Plaintiff was doing fairly well and could continue to perform his regular duty work. Tr. 215-216.

On May 29, 1999, Plaintiff complained to Dr. Noble of some discomfort in his leg and occasional sharp pain radiating down to his buttock region. Motor testing demonstrated no abnormalities and deep tendon reflexes were symmetric. Dr. Noble explained that Plaintiff's pain was probably referred pain from the disc and advised Plaintiff to taper off his pain medication as much as possible. Dr. Noble thought Plaintiff would continue to improve and stated that Plaintiff could continue to perform unrestricted work. Tr. 217. On June 28, 1999, Dr. Noble referred Plaintiff for epidural steroid injections, but stated he could continue regular duty work. Tr. 218.

5

On November 16, 1999, Dr. Noble noted that Plaintiff still experienced some pain, but was feeling much better and had stopped taking Lortab. Plaintiff had no motor deficits and symmetric deep tendon reflexes. Dr. Noble's impression was that Plaintiff had reached maximum medical improvement. He assigned Plaintiff a ten percent whole person impairment rating. Tr. 220.

The next treatment note in the record is from September 5, 2005, at which time Plaintiff was treated at the emergency room after he was the unrestrained back seat passenger in a two-car collision. Plaintiff complained of severe back pain. Examination of Plaintiff's back revealed that Plaintiff had mild tenderness to palpation in his lumbar region, but normal motor strength and no neurological deficits in his legs. X-rays showed only minimal lumbar spondylosis. Plaintiff was discharged with pain medications, and advised to follow-up with his physician. Tr. 231-240..

On June 26, 2008, Dr. Sushil K. Das performed a consultative examination of Plaintiff in connection with his application for benefits. Tr. 245-248. Plaintiff reported a history of back pain, foot swelling, knee pain, and hip pain. He said he did not have any problems from his right scaphoid fracture. Plaintiff admitted smoking one and a half to two packs of cigarettes a day. He reported he had not worked for two years. Tr. 245. Dr. Das noted that Plaintiff had full muscle strength, intact sensation, normal reflexes, normal gait and station, negative straight-leg raise testing, and full range of motion in his back and extremities. There was no edema, cyanosis, or jaundice in his extremities. Tr. 246. Plaintiff had no muscle atrophy, and no joint instability, swelling, or deformity. Tr. 247. A lumbar spine x-ray showed findings consistent with L5-S1 degenerative disc disease. Tr. 249.

Plaintiff reported to Dr. Das that he could stand for thirty-five to forty minutes before his feet started to swell and could sit for thirty to forty minutes. Dr. Das thought that Plaintiff could "do a lot more than that" and opined that Plaintiff could sustain a reasonable walking pace over a sufficient

distance and push, pull, reach, grasp, and finger objects in order to carry out his activities of daily living without assistance. Tr. 246. Dr. Das observed that Plaintiff was a "fairly healthy gentleman" who drank and smoked heavily, and that there was no reason for Plaintiff not to do normal physical activity. Tr. 247.

On July 19, 2008, Dr. Ellen Humphries, a State agency physician, reviewed Plaintiff's medical records. She opined that Plaintiff had the ability to lift and carry fifty pounds occasionally and twenty-five pounds frequently; could stand and/or walk about six hours in an eight hour workday; and could sit for about six hours in an eight-hour workday. Tr. 250-257.

On September 15, 2008, Dr. Lindsey Crumlin, another State agency physician, reviewed Plaintiff's medical record and concluded he retained the ability to lift and carry twenty pounds occasionally and ten pounds frequently; stand and/or walk about six hours in an eight-hour workday; sit about six hours in an eight-hour workday; occasionally climb ramps, stairs, ladders, ropes, and scaffolds; and frequently balance, stoop, kneel, crouch, and crawl. Tr. 263-270.

Plaintiff was treated at an emergency room on September 3, 2009 for complaints of a cough, shortness of breath, congestion, and a fever. Neurological examination was normal. Mild intermittent rhonchi bilaterally were noted, but Plaintiff had normal chest excursion with respiration. A chest x-ray revealed mild interstitial disease presumably related to scarring. Medications were prescribed for Plaintiff's cough. Tr. 271-272.

On September 24, 2009 (five days before the administrative hearing), Plaintiff was examined by Dr. Lalonda Graham. Plaintiff complained of right lower back pain that radiated down the back of his right leg to his toe. Plaintiff reported that his pain was relieved by taking Tylenol and said he had gotten some hydrocodone from a friend. Plaintiff estimated he could stand for fifteen to twenty

7

minutes at a time, sit for twenty minutes at a time, and walk an eighth of a mile. He said he could not bend at the waist very far due to pain. Tr. 273. Plaintiff reported he had coughed up a little bit of blood two to three months previously, and recently obtained an inhaler and pills for his respiratory symptoms. He reported he smoked two to three cigarettes a day. Examination revealed that Plaintiff's lungs were clear to auscultation; he had normal respiratory rate and rhythm; no wheezing, crackles, or rales; tenderness to palpation over his right buttock; and deceased muscle strength in his right leg. Dr. Graham assessed tobacco addiction, back pain, sciatica, and urinary frequency. She prescribed a non-steroidal anti-inflammatory medication and a muscle relaxant. Tr. 274.

## **HEARING TESTIMONY**

At the hearing before the ALJ, Plaintiff testified that he last worked in 2005, picking up trash and delivering things for a construction company. He indicated that the heaviest weight he lifted doing this work was twenty pounds. Tr. 24-25. He testified that two or three years after his back surgery, his back pain started to become a serious problem for him. Tr. 39. Plaintiff stated that he had arm and shoulder pain and his elbow locked up. He said his arm had been bothering him for a year and a half and he had gone to see Dr. Graham about it the previous week. Tr. 27-28. Plaintiff said he had not sought medical care sooner because he could not afford it, but recently learned he could see a physician for $25. Tr. 29.

Plaintiff testified that his back, shoulder, and elbow ached. Although he was able to work for several years after his injury, he thought his arthritis had gotten progressively worse. Tr. 32. Plaintiff stated that he generally took over-the-counter medication for pain, although he recently was prescribed medication for muscle spasms. Tr. 32-33.

Plaintiff estimated that he could sit for about twenty minutes before his foot became numb, and he could stand for about twenty minutes. He thought he could walk about a quarter of a mile. Plaintiff said that his pain was alleviated by lying down. Tr. 34. Plaintiff testified that he had been smoking up to two packs of cigarettes a day, but had stopped smoking three weeks previously because he had the "first traces of COPD." Tr. 41. Plaintiff reported he lived in a mobile home with a friend who paid the rent and all the other bills. Tr. 27. His roommate bought the cigarettes for him. Tr. 42-43. Plaintiff testified that on a typical day he would "just piddle around." Tr. 44.

## **DISCUSSION**

Plaintiff appears to allege that the ALJ's decision is not supported by substantial evidence. He has submitted new evidence which he claims shows that he is disabled and that his condition has deteriorated. The Commissioner argues that substantial evidence[1] supports the Commissioner's final decision that Plaintiff was not disabled within the meaning of the Social Security Act.

A.    <u>Substantial Evidence</u>

Plaintiff appears to argue that the ALJ's decision is not supported by substantial evidence. He claims he has a combination of impairments (including COPD, high blood pressure, and back problems) that prevent him from working. The Commissioner argues that the ALJ's decision is supported by substantial evidence and that the ALJ acknowledged Plaintiff had severe

---

[1]Substantial evidence is:
> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984); Laws v. Celebreeze, 368 F.2d 640, 642 (4th Cir. 1966). It must do more, however, than merely create a suspicion that the fact to be established exists. Cornett v. Califano, 590 F.2d 91, 93 (4th Cir. 1978).

impairments, but properly found that Plaintiff retained the residual functional capacity ("RFC") to perform a full range of sedentary work despite these impairments.

The ALJ's determination that Plaintiff had the RFC to perform sedentary work despite his combination of impairments is supported by substantial evidence. No medical source placed any restrictions or limitations on Plaintiff's activities after he recovered from surgery. By April 8, 1999, Dr. Nobel opined that Plaintiff was doing fairly well and could continue to perform his regular work. Tr. 216. A month later, on May 29, 1999, Dr. Nobel thought that Plaintiff could continue unrestricted work. Tr. 217. On June 28, 1999, Dr. Nobel opined that Plaintiff could continue regular duty work. Tr. 218. On November 16, 1999, Dr. Nobel noted that Plaintiff had reached maximum medical improvement and assigned him a ten percent whole person impairment rating. Tr. 220. The fact that Plaintiff's treating physician released him to work with no restrictions supports the ALJ's findings.

See Lee v. Sullivan, 945 F.2d 687, 693 (4th Cir. 1991)(finding that no physician opined that claimant was totally and permanently disabled supported a finding of no disability); Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)(treating physician's opinion entitled to great weight). Further, an impairment rating of ten percent is not necessarily indicative of disability. See, e.g., Loving v. Department of Health & Human Servs., 16 F.3d 967, 968 (8th Cir. 1994)(workers' compensation disability rating of five percent, claimant found not disabled); Stephens v. Heckler, 766 F.2d 284, 285 (7th Cir. 1985)(thirty percent workers' compensation disability rating, claimant found not disabled); Waters v. Gardner, 452 F.2d 855, 858 (9th Cir. 1971)(majority of doctors rated the claimant's disability at less than thirty percent, claimant found not disabled).

After Dr. Noble placed Plaintiff at maximum medical improvement in November 1999, Plaintiff continued working. The next record of medical care is not until September 2005, when Plaintiff went to the emergency room after a motor vehicle accident. Tr. 233. Plaintiff was advised to follow-up with his physician, but the record does not contain any treatment notes for Plaintiff's allegedly debilitating back pain for another four years, when he was examined by Dr. Graham five days prior to the hearing before the ALJ.

Objective medical evidence also supports the ALJ's decision. See Craig, 76 F.3d at 590 (lack of objective findings supported ALJ's decision); Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986)("pain is not disabling per se, and objective evidence of pain cannot take precedence over objective medical evidence or the lack thereof"). As noted by the ALJ, x-rays only indicated that Plaintiff had some degenerative disc disease at L5-S1, and clinical findings were essentially normal. See Tr. 13. Medical examination revealed that Plaintiff had full muscle strength, intact sensation, normal reflexes, normal gait and station, full range of motion of Plaintiff's back and extremity, no edema or cyanosis in Plaintiff's extremities, no jaundice, no muscle atrophy, no joint instability, no swelling, and no deformity. Tr. 246-247. Dr. Graham noted that Plaintiff had normal respiratory rate and rhythm, no wheezing, no crackles, and no rales. Tr. 274. The medical opinion of examining physician Dr. Das (Tr. 247), who concluded that Plaintiff was fairly healthy and there was no reason for Plaintiff not to do normal physical activity, also supports the ALJ's decision.

The ALJ's physical RFC findings are also supported by the findings of the State agency physicians (Dr. Humphries and Dr. Crumlin) who reviewed Plaintiff's medical records and opined that Plaintiff could perform medium and light work respectively. See 20 C.F.R. §§ 404.1527(f)(2) and 416.927(f)(2); SSR 96-6p ("Findings of fact made by State agency ... [physicians ]... regarding

the nature and severity of an individual's impairments must be treated as expert opinion of non-examining sources at the [ALJ] and Appeals Council level of administrative review.").

In reaching his decision that Plaintiff was not disabled, the ALJ properly took into account Plaintiff's subjective complaints and discounted them based on the medical and non-medical evidence.[2] As discussed above, the objective medical evidence (including the findings of Plaintiff's examining and treating physicians) did not support Plaintiff's allegations that he suffered from disabling symptoms. The fact that Plaintiff continued to work at jobs that required significant exertion after his August 1997 alleged onset date casts additional doubt as to the veracity of his claims that he had debilitating pain. See Tr. 25-26, 133, 138, 139, 145.

The ALJ also properly discounted Plaintiff's credibility based on the inconsistencies between Plaintiff's testimony and the evidence of record. See Mickles v. Shalala, 29 F.3d at 930. Despite his claims of disabling pain, Plaintiff did not seek medical treatment for many years and did not even try to obtain low-cost or free medical care until just a few days before his administrative hearing. Plaintiff testified that he stopped smoking three weeks before the September 29, 2009 hearing (Tr. 41), but informed Dr. Graham five days previously that he was still smoking two to three cigarettes

---

[2] In assessing credibility and complaints of pain, the ALJ must: (1) determine whether there is objective evidence of an impairment which could reasonably be expected to produce the pain alleged by a plaintiff and, if such evidence exists, (2) consider a plaintiff's subjective complaints of pain, along with all of the evidence in the record. See Craig v. Chater, 76 F.3d at 591-92 (4th Cir. 1996); Mickles v. Shalala, 29 F.3d 918 (4th Cir. 1994). Although a claimant's allegations about pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which the impairment can reasonably be expected to cause the pain the claimant alleges he suffers. A claimant's symptoms, including pain, are considered to diminish his or her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4).

a day (Tr. 273). Plaintiff testified that he had not worked since 2005 (Tr. 25), but completed a Work Activity Form in May 2008 indicating he had been working part time at odd jobs since January 2006 (Tr. 138).

As the ALJ reasonably found that Plaintiff had the RFC to perform the full range of sedentary work, he reasonably relied on the Grids to determine that Plaintiff could perform significant numbers of jobs in the national economy.

In his brief, Plaintiff appears to argue that the ALJ erred because it was stated that Plaintiff worked at Hemlock Golf Club, but Plaintiff denies doing so. Plaintiff's Brief at 2. Plaintiff fails to show any error. Although there was a brief discussion at the hearing concerning records that indicated Plaintiff worked at Hemlock Golf Club and had earnings from 2008 and 2009, Plaintiff denied ever working for any golf club in the two years prior to the hearing. Tr. 25. In his opinion, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 15, 1997. Tr. 10. The ALJ noted that Plaintiff had earnings from 1998 to 2001 and in 2005, but did not mention any earnings during the years in question (2008 and 2009). He further wrote that Plaintiff testified to having last worked in October 2005 (driving a truck and picking up trash). Id. The decision does not contain any reference to any work at a golf club or any work or earnings during 2008 or 2009.

  B.  <u>New Evidence</u>

With his brief, Plaintiff attached additional medical evidence consisting of a letter from Dr. Graham dated October 20, 2010. Dr. Graham wrote that Plaintiff had pain in his low back which radiated down his right leg to his toe with associated numbness. Plaintiff reported to her that he was able to sit/stand in twenty minutes increments without suffering pain, and could walk

approximately one-eighth of a mile "without developing pain that has been so severe he has fallen to the ground in response to it." Dr. Graham noted that Plaintiff also reported numbness in his arms and hands, which she suspected was due to carpal tunnel syndrome. She presumed that Plaintiff's chronic cough and wheezing, given his history of smoking, represented COPD. Dr. Graham opined that due to his chronic back pain, Plaintiff would be unable to return to his previous line of work. See Plaintiff's Brief, attachment. Plaintiff argues that this new evidence shows he should be found disabled. He appears to claim that his physician has said he is disabled. The Commissioner argues that the additional evidence submitted is not material because it does not relate to the relevant time period and thus does not warrant remand of this case.

Plaintiff fails to show that the evidence attached to his Brief should be considered by this Court. "Reviewing courts are restricted to the administrative record in performing their limited function of determining whether the [Commissioner's] decision is supported by substantial evidence." Huckabee v. Richardson, 468 F.2d 1380, 1381 (4th Cir. 1972); see also 42 U.S.C. § 405(g). The evidence submitted by Plaintiff is not part of the administrative record. Thus, the Commissioner's decision should not be reversed based on this evidence as it is not part of the administrative record.

Additionally, Plaintiff fails to show that this action should be remanded to consider new evidence. Additional evidence must meet four prerequisites before a reviewing court may remand the case to the Commissioner on the basis of newly discovered evidence. These prerequisites are as follows:

> 1. The evidence must be **relevant** to the determination of disability at the time the application was first filed and not merely cumulative.

>    2.  The evidence must be **material** to the extent that the Commissioner's decision might reasonably have been different had the new evidence been presented.
>
>    3.  There must be **good cause** for the claimant's failure to submit the evidence.
>
>    4.  The claimant must present to the remanding court at least a **general showing** of the nature of the new evidence.

Borders v. Heckler, 777 F.2d 954 (4th Cir. 1985)(emphasis added).[3]

Plaintiff has not shown that the record attached to his Brief (for medical treatment almost a year after the ALJ's December 2009 decision) is "relevant." A claimant must establish that the evidence was "relevant to the determination of disability at the time the application was first filed and not merely cumulative." Mitchell v. Schweiker, 699 F.2d 185, 188 (4th Cir. 1983). The record submitted with Plaintiff's brief is not relevant as it does not relate to the period on or before the ALJ's decision. Additionally, this record is not material as Plaintiff fails to show that the new evidence would have reasonably provided a basis for changing the ALJ's decision. Although Dr. Graham opined in the October 2010 letter that Plaintiff could not return to previous line of work, this is not contrary to the ALJ's decision which found that Plaintiff could not perform his past relevant work and found that Plaintiff could only perform sedentary work.

---

[3] The court in Wilkins v. Secretary of Dep't of Health & Human Serv., 925 F.2d 769 (4th Cir.1991), rev'd on other grounds, 953 F.2d 93 (en banc), suggested that the more stringent Borders four-part inquiry is superceded by the standard in 42 U.S.C. 405(g). Id. at 774; see Wilkins, 953 F.2d at 96 n. 3. The standard in 42 U.S.C. § 405(g) allows for remand where "there is new evidence which is material and ... there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." However, Borders has not been expressly overruled. Further, the Supreme Court of the United States has not suggested that the Borders construction of 42 U.S.C. § 405(g) is incorrect. See Sullivan v. Finkelstein, 496 U.S. 617, 626 n. 6 (1990). Thus, the more stringent Borders test should be applied. Even if the less stringent test is applied, Plaintiff fails to show that this case should be remanded because he fails to show that the new evidence is "material."

Even if the evidence shows a deterioration in Plaintiff's condition after the ALJ's decision, it would not be a basis for remand, although it might be grounds for a new application for benefits. See Jones v. Callahan, 122 F.3d 1148, 1154 (8th Cir. 1997)("Additional evidence showing a deterioration in a claimant's condition significantly after the date of the Commissioner's final decision is not a material basis for remand, although it may be grounds for a new application for benefits."); see also Godsey v. Bowen, 832 F.2d 443, 445 (7th Cir. 1987); Sanchez v. Secretary of Health & Human Servs., 812 F.2d 509, 512 (9th Cir. 1987).

## **CONCLUSION**

Despite Plaintiff's claims, he fails to show that the Commissioner's decision was not based on substantial evidence. This Court may not reverse a decision simply because a plaintiff has produced some evidence which might contradict the Commissioner's decision or because, if the decision was considered de novo, a different result might be reached.

This Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence, Richardson v. Perales, supra. Even where a plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision, Blalock v. Richardson, supra. The Commissioner is charged with resolving conflicts in the evidence, and this Court cannot reverse that decision merely because the evidence would permit a different conclusion.

Shively v. Heckler, supra.  It is, therefore,

RECOMMENDED that the Commissioner's decision be affirmed.

Joseph R. McCrorey
United States Magistrate Judge

October 18, 2011
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).